I'm Richard Salone, and I represent SSA Terminals and Homeport Insurance Company. This is a case… I just want to say about this case, it's a very fact-driven case and a very, very thorough decision by the ALJ. I want you to know we are familiar, quite familiar, with the facts of this case and with the decision, and let's try to get to what your legal argument is for our finding that the ALJ abused its discretion or whatever similar standard we have and why we should reverse that decision under the appropriate standard. Judge, I apologize, I have a little hard of hearing, but to the heart of the case is we submit that the Administrative Law Judge erred as a matter of law because he applied a cumulative trauma standard to hold my client liable for a traumatic accident which occurred with another stevedore and company shortly before Mr. Amezcua came to work with our client and worked light duty for five days and had no accident with our client. And we submit, Your Honor, that this court must consider errors of law de novo. The facts stand on their own. The upshot of this case is that Mr. Amezcua was working for use in terminals, which is a stevedore and company, in the Port of Los Angeles. He fell off of a rail car, landed on his right knee, it snapped, he went to the emergency room. I mean, that's what I was trying to say. We are very familiar with the facts and with the decision, so try to just explain the legal argument about, your argument is that he applied the wrong standard because this was, he called this, he said this was a cumulative, where it was not cumulative, is that the argument? Your Honor, the argument is this, is that there was a specific traumatic injury that rendered Mr. Amezcua totally disabled from the moment he fell from that rail car and tore his ACL and his medial meniscus. Well, he obviously wasn't totally disabled because he worked a number of days after that. He worked five days with my client after Dr. Delman told him that he should not do any more work, that he needed 12 to 16 weeks of treatment, and that the MRI he ordered reflected that he tore his ACL and his medial meniscus. He worked five days light duty driving a UTR, which is a small truck around the Port of Los Angeles. He had no injury with our client. He did not complain to our client about any problem. I'm sorry, I thought the ALJ did find that he had an injury with your client. No, in fact, Judge, I thought you all would ask me that, and I wanted to read this to you. Funny thing, huh? I appreciate the opportunity to, we were unclear about his original decision in order, and we asked for reconsideration about a number of things. And this is what he said, this is in his order of reconsideration, it's in the record excerpt at page 12. And this is what he said, and I quote, in the decision I specifically found that Klayman did not suffer a new injury while working at SSA terminals, my client, but instead suffered a permanent aggravation to his knee from the cumulative trauma he sustained by his continued work with our client. There was no injury at all with our client, your honor. Well, wait a minute. I'm no doctor, but I know what meniscus is, what a meniscus is, and I know what an ACI is. It sounds like, as I've read the record, that Klayman suffered the injury at the previous employer. He went to work for your client and aggravated a pre-existing injury. You're denying that? Well, we're not denying that he aggravated his injury, but his injury was unhealed. Well, does it matter? I mean, in terms of the last responsible employer rule, I realize that may seem unfair, but that's the law. So the question is, did he aggravate an existing injury? If he did, what can you point to in the law that says that, notwithstanding the apparent unfairness of it, that your client somehow doesn't bear responsibility? Cumulative trauma, your honor, a cumulative trauma case is a repeated trauma that goes on for a period of time without any specific orthopedic injury. Now, the law judge found that this court's decision in 2003, in the Metropolitan-Stevedores versus Price decision, was on all fours, and that was what he used to decide this case. But if you look at the Metropolitan-Stevedores case, that case dealt with a man that was a forklift driver and a mechanic for 36 years. He had no accident with any employer. In September of 1993, his surgeon, orthopedic surgeon, said, your knees are worn out from your work, and we're going to have to do a total knee replacement of both knees. He continued to work, doing his regular work, for another year and seven months, performing work as a forklift driver. He was never pulled from work by any doctor until 19 months later, after he was told he needed a knee replacement. 19 months later, after he continued to work, he finally went to the doctor and said, I can't work anymore, and that's when they did the knee replacement. That case is a true cumulative trauma case. But in that case, as I understand it, at page 1105, 1106, found that even in, quote, a marginal increase in the underlying injury is enough to impose liability on the last employer. Is that correct? That's correct in a cumulative trauma case, where the guy continues to work. In our case, both... You're just saying that this guy didn't continue to work, right? No. You're saying he didn't work for your client. The definition of an injury under Section 2 of the Longshore Act is the injury in any natural and unavoidable consequence of an injury. And a flare-up in pain, we would submit to Your Honor, is a natural and unavoidable consequence of a torn ACL and a torn... You're saying that was what happened, whether he was working for your client or not. I'm sorry, Your Honor? You're saying that this flare-up would have happened whether he was working for your client or not. Your Honor, I'm not the only one that says it. Both Dr. Sisto, who's Euston's orthopedic surgeon, testified in his deposition, and we've indicated in the record, that he said anything short of bed rest would have aggravated this man's injury from the Euston accident. In fact, Your Honor, the law judge made that finding in his original decision and order, and it's in our record excerpt at page 37. This is what the law judge said. Quote, Dr. Sisto used his extensive experience with knee injuries and his knowledge of ACL and meniscus tears to propound persuasively that Klayman could not have continued to work, walk, or otherwise live his life without causing an aggravation to his injured knee. And that is the natural and unavoidable consequence of a serious injury to the knee that the Klayman had with Euston Klaman. So let me ask you this hypothetical then. Let's assume you had this gentleman, or take anybody. We'll call him Mr. X. So Mr. X has the injury that this Klayman had at the previous employer, the torn meniscus, ACL problems. And he would have experienced some trauma whether he worked for your client or not, but he goes and works for the client and he has, he claims that he stepped in a particular way, did something that aggravated it. Are you saying that the fact that he might have done the same thing or experienced the same pain not working somehow changes the liability in this case? I do say that, Your Honor, because we don't believe that's the definition that Congress intended under Section 2 for an injury. The definition of an injury under Section 2 is not only the injury itself, but the natural and unavoidable consequences of that injury. Both Dr. Sisto and Dr. Delman, and particularly Dr. Sisto because he was deposed, he admitted that the Klayman would not have been disabled but for his accident with Euston. He admitted the Klayman would not have needed surgery but for his accident with Euston. He admitted that the Klayman's injuries with Euston would have never healed without the surgery and he admitted that the Klayman was 100% impaired as a result of his accident with Euston. And, Your Honor, we would submit when you deal with a traumatic accident as opposed to an occupational hazard over a period of 40 years, there's a clear distinction between the application of a cumulative trauma standard and the application of a single traumatic injury standard. And we would believe that to uphold the administrative law judge in this case, when the Klayman had no accident with our client, he had no new or different symptoms with our client, did not even complain to our client about a problem that he was already rendered totally disabled by both doctors from his accident with Euston. To find our client liable for those injuries we would believe would be completely inconsistent with the definition of injury in Section 2 of the Act. We also would like to point out that both doctors made it clear that the Klayman was totally disabled on January 12th of 2000, on January, as of the moment of injury, on January 12th of 2009, when he fell from that rail car with Euston, they both said he was totally disabled until he had that surgery. So he had no ability to work. If he continued to work. Against medical advice. Well, but he continued to work, whether against medical advice or not. He continued to work. And not just with your client, he continued for other jobs as well. Well, he continued to work against medical advice, but the pain flare-ups were not caused by my client. When Dr. Sisto and the ALJ both found anything short of bed rest would have aggravated his need. It's true, maybe other things would have, but yours did. Maybe had he not worked for you, he would have aggravated it some other way. But he did, unfortunately. But Your Honor, we don't believe. And it was aggravated by the law? Yes, sir. We don't believe the Longshore Act and Congress's definition of injury extends to a fact situation like this. To a finding of aggravation? Well, the aggravation was a natural and unavoidable consequence of his tears. It wasn't, it had nothing to do with light duty work with our client. His aggravation was just standing up on that knee. And that was a natural and unavoidable consequence of what happened to him when he fell from that rail car. Those were the tears that were causing the pain flare-ups. Dr. Sisto said that anything short of bed rest would have aggravated that need. And that's insufficient in your view? I'm sorry, Your Honor? And that's insufficient in your view? Yes. Well, in my view and my reading of the case is yes, sir, that is insufficient. Now, I'd like to reserve the rest of my time for rebuttal, if I could, please. Thank you. Good morning, Your Honors. Larry Postol for Houston Terminals. Obviously by your questions, you understand the facts. Counsel is trying to make a difference between accumulative trauma and sometimes called aggravation, sometimes called two injury cases. They're all the same thing. Accumulative trauma is merely repeated aggravations. So it comes down to this, it seems to me, from your opponent's argument. He says that whatever this gentleman did, he would have had this reaction. Anything short of bed rest, this would have happened anyway. I understand, and I'll respond to that, Your Honor. And that therefore, it wasn't really due to his work for his client, but it was something that was inevitable and was a natural consequence that whether or not he had worked for his client, this would have occurred. That's not compensable under the act. Sure. What's your answer to that? The answer is twofold. One is no doctor has said what happened was a natural progression. That's counsel's argument. He can't cite to any doctor saying that. What about the citation to Dr. Sisto who said that anything short of bed rest would have... Sure. But he didn't say it was a natural progression. Natural progression is this would have happened no matter what. I mean, obviously, every aggravation in a sense... But he didn't say anything short of bed rest would have produced this. Sure. He's saying if, in fact, he uses a leg, he's going to injure it. He's going to aggravate it. And he did. But that's not the definition of natural progression. Natural progression is no matter what, this would have happened. I think, as Your Honor mentioned, everything in some sense is every time you have a new injury, it's sort of a natural... You could argue it's a natural progression because you did something and it happened. Natural progression is that it's unavoidable. What happened, your work did not cause it. It's the injury would have happened no matter what. Dr. Sisto said, sure, if you do... If he did, if he put weight on it, he would injure it. If the doctor had, in fact, advised him initially to put the bed rest, as he should have, then, in fact, it wouldn't have progressed. And, in fact, the judge addressed natural progression on page 39 of the record. And he said this is not a case of natural progression. So, one, no doctor in this record has said it was a natural progression, and the judge specifically addressed that issue on page 39 of the record and said it is not a natural progression. And I think that's fully supported by the testimony because he said if you work, you're going to injure it. He didn't say no matter what, this was going to happen. And in this case, because the ALJ explained the reason for the ruling and believing one physician versus another, we have to defer to the ALJ's fact-finding. Is that correct? Correct. In fact, frankly, I'm not sure why we're here. Because the judge did everything he's supposed to do. And he explained it in great detail. He said, look, I understand Dr. Delma is a treating doctor. But he said, look, first of all, he just said there wasn't a permanent aggravation by the objective evidence. He didn't consider this objective evidence. He then said, look, this isn't rocket science. I mean, even for non-doctors, he said, look, you have a torn ligament. So the knee is unstable. It's going to move back and forth. You have the shock absorber, the meniscus in between. And when you use that leg and you move in between, you're going to cause damage to the meniscus. And that's what they did. And I also should address sort of the unfairness. The whole idea of the aggravation rule, which for attorneys sometimes is aggravating when you're the second employer, but the theory is it's all going to even out in the end. In the long run. Yeah, one day I'm going to aggravate you, then your employee, the next day you're going to do it. In this case, we're right here. Because the irony is in the Fairchild case, which the judge relied on, we were in the exact opposite. His employer was first. My employer was second. And I got stuck with it for exactly the same testimony. That based on subjective complaints of a UTR driver, Dr. Delman said there was an aggravation. And, you know, I mean, the irony, at least, is fairly obvious. If there are no more questions, I'll give you your time. Gratefully accepted. Your Honor, first, we fully explained the Fairchild case in our brief, and we believe the Fairchild case was nothing more than a smokescreen. That was a true cumulative trauma case.  Your Honor, this is what the circuit said at the first page of the Metropolitan Stevedores v. Price decision. It says, if the worker's ultimate disability is a result of the natural progression of the initial injury and would have occurred notwithstanding a subsequent injury, the employer of the worker on the date of the initial injury is a responsible employer. And this is what the record says by both doctors. They both agreed that Mr. Amazuri was totally disabled as a result of the tears that he's had in his knee from the use and accident. They both said he was totally disabled from that accident. They both agreed that the necessary treatment was a surgery that Dr. Delman recommended. They both agreed that the surgery would not have been necessary but for the use and accident. They both agreed that the tears of the ACL and the meniscus were not a heal without the surgery. There could not be a more clear-cut case of the ultimate disability having been caused by use and not by the claim it's five days of light-duty work with our client. Thank you, Your Honor. Thank you, counsel. Thank you. Thank you both very much. The case is adjourned and will be submitted. The court will stand in recess for the day.
judges: Reinhardt, Paez, M. Smith